UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

| | |
|---|---|
| United States of America, | Case No. 22-cr-270 (DWF/DJF) |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION** |
| Damon Artesse Guy, | |
| Defendant. | |

---

## INTRODUCTION

This matter is before the Court on Mr. Guy's Second Motion for Suppression of Evidence ("Motion to Suppress") (ECF No. 47).[1] The Court held a hearing on this matter on June 6, 2023. (ECF No. 53).[2] Glenn P. Bruder appeared on behalf of Mr. Guy. (*Id.*) Esther Mignanelli appeared on behalf of the Government.[3] (*Id.*) Based on the parties' written submissions, hearing testimony, and on the entire file, the Court recommends Mr. Guy's Motion to Suppress be denied.

---

[1] The undersigned United States Magistrate Judge considers this matter pursuant to a general referral in accordance with the provisions of 28 U.S.C. § 636 and Local Rule 72.1.

[2] The Court had scheduled this matter for a hearing on March 2, 2023. (ECF No. 25.) Just before the hearing, Mr. Guy informed the Court that he intended to plead guilty. (ECF Nos. 27, 28.) At his change of plea hearing, though, Mr. Guy did not plead guilty and instead asked the Court to appoint new counsel. (ECF No. 30.) The Court appointed Mr. Guy new counsel on April 14, 2023. (ECF No. 34.) The parties subsequently filed a number of non-dispositive pretrial motions (ECF Nos. 42-46), which the Court addressed in an Order on June 6, 2023. (ECF No. 54.) The Court addresses Mr. Guy's only remaining motion (ECF No. 47) in this report and recommendation.

[3] AUSA Mignanelli covered the hearing for AUSA Andrew Dunne. (ECF No. 62 at 2.)

1

## BACKGROUND

On October 11, 2022, the Government charged Mr. Guy in a two-count Indictment with possession with intent to distribute controlled substances in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(c) ("Count I"), and possession of a firearm in furtherance of drug trafficking in violation of 18 U.S.C. § 924(c) ("Count II") (ECF No. 1). The events that led to Mr. Guy's indictment occurred on May 14, 2022. (*Id.* at 1.) During Mr. Guy's hearing, Minneapolis Police Officer Brandi Wagaman testified she was one of four Minneapolis police officers who responded to a 911 call reporting that a person, later identified as Mr. Guy, was slumped in a common hallway in an apartment building with a gun magazine in his hand. (ECF No. 59 at 11:18-20.) Officer Wagaman testified that, when the 911 caller let her and the other officers into the building, she observed Mr. Guy with the magazine in his hand and a gun on his left side. (*Id.* at 12:10-13.) She further testified that Mr. Guy was unresponsive to the officers' attempts to rouse him, so they called an ambulance.[4] (*Id.* at 12:25-13:1-11.)

Officer Wagaman explained that while Mr. Guy was unresponsive, another officer searched him (*id.* at 13:12-14) and recovered bottles of medication (*id.* at 25:2-14), including 700 tablets of Oxycodone, 700 tablets of Alprazolam, and various other pills (ECF No. 62-1 at 1). She testified that the search was necessary to determine whether Mr. Guy was suffering the effects of alcohol or drugs, so the officers could administer Narcan if necessary. She also testified, "When there's one firearm, you don't know what else the person has." (ECF No. 59 at 14:1-12.) Officer Wagaman further stated that she put the pills in an evidence bag but did not look to see what types of pills they were. (ECF No. 59 at 25:16-18.) Finally, while Officer Wagaman testified that she

---

[4] In his Motion to Suppress, Mr. Guy similarly acknowledged that "officers admittedly found [him] overdosing and unconscious" and "facilitated the administration of medical services to reverse the overdose." (ECF No. 47 at 2.)

2

did not personally administer Narcan to Mr. Guy and was not sure what type of medical aid other officers or paramedics rendered, she knew that paramedics transported Mr. Guy to a hospital. (*Id.* at 17:1-2, 26:1-25.)

According to the police report documenting the May 14 incident:[5]

> Officers rendered aid to AP/DAMON who was unconscious with agonal breathing and pinpoint pupils. Officers searched AP/DAMON's person for his and Officer safety due to the weapon located and to look for any medication or narcotics to determine if AP/DAMON was experiencing a medical emergency. EMT was requested to our location. Officers found 3 bottles of Oxycodone (700 tablets total), 3 bottles of Alprazolam (700 tablets total), a clear baggie of unknown amount of pink, blue and white pills, 12 Suboxone strips on his person.

(ECF No. 62-1 at 1.)

Mr. Guy initially asserted an intoxication defense and sought to suppress all evidence acquired by the Government during his intoxicated state, including the handgun, loaded magazine, and pills. (ECF No. 47 at 1.) In his post-hearing briefing, Mr. Guy clarified that he seeks to suppress just the pills. (ECF No. 61 at 3 n.1.) He claims officers obtained the pills through a warrantless search not subject to any exception. (*Id.* at 3-8; ECF No. 63 at 2-4.)

The Government argues suppression is not warranted because the search was justified under the community caretaking exception and to save Mr. Guy's life, and that even if the search were improper, the pills inevitably would have been discovered. (ECF No. 62 at 7-10.) For the reasons set forth below, the Court agrees the search was justified.

---

[5] Officer Armina Hrustanovic, who authored the report, did not testify at Mr. Guy's hearing because she is no longer with the Minneapolis Department and resides outside the country. (ECF No. 62 at 8.) The Government avers that it provided her report to Mr. Guy well before the motion hearing. (ECF NO. 62 at 9.)

**DICUSSION**

Under the Fourth Amendment, warrantless searches are presumptively unreasonable except for a few well-defined exceptions. *Katz v. United States*, 88 S.Ct. 507, 514 (1967). One exception applies when the exigencies of the situation make the needs of law enforcement so compelling that a warrantless search is objectively reasonable. *Carpenter v. United States*, 138 S.Ct. 2206, 2223 (2018) (citing *Kentucky v. King*, 131 S.Ct. 1849, 1856). "One exigency obviating the requirement of a warrant is the need to assist persons who are seriously injured or threatened with such injury." *Brigham City v. Stuart*, 126 S.Ct. 1943, 1947 (2006). "To determine whether a law enforcement officer faced an emergency that justified acting without a warrant, [the] Court looks to the totality of circumstances." *Missouri v. McNeely*, 133 S.Ct. 1552, 1559 (2013).

Prior to 2021, it was well established in the Eighth Circuit that the community-caretaking exception was a standalone doctrine that alone could justify a warrantless search. *Graham v. Barnette*, 5 F.4th 872, 882 (8th Cir. 2021). But in May 2021, the Supreme Court held there is no standalone community-caretaking exception that justifies warrantless searches and seizures in the home. *Caniglia v. Strom*, 141 S.Ct. 1596, 1598 (2021). The *Caniglia* decision did not abrogate the Supreme Court's longstanding precedent that other exceptions to the prohibition against warrantless searches still apply, however, including the need to render emergency medical aid. *Graham*, 5 F.4th at 882.

Suppression is the inevitable outcome of an unconstitutional warrantless search and seizure. *Segura v. United States*, 468 U.S. 796, 805 (1984). Under the inevitable-discovery doctrine, however, unconstitutionally found evidence that nevertheless would have been acquired need not be suppressed. *United States v. Baez*, 983 F.3d 1029, 1037 (8th Cir. 2020). For the inevitable-discovery doctrine to apply, the Government must establish through "a preponderance

4

of the evidence" that it inevitably would have discovered the evidence at issue through lawful means. *United States v. McManaman*, 673 F.3d 841, 846 (8th Cir. 2012) (citing *Nix v. Williams*, 467, U.S. 431, 444 (1984)). The Eighth Circuit has used two tests for this doctrine: one requiring the Government to show only that the evidence would have been lawfully acquired but for the constitutional violation; and one requiring the Government to also show it was "actively pursuing" an alternative line of investigation at the time of the police misconduct. *Baez*, 983 F.3d at 1038-39 (describing its "inconsistent" approach and declining to resolve which test controls).

Mr. Guy argues the pills found in his pockets should be suppressed because police did not search his person to render medical aid, but to "ferret[] out evidence of a crime." (ECF No. 61 at 4.) He contends Officer Wagaman's testimony shows that no officer made any attempt to identify the pills found in his pockets, to render medical aid based on that discovery, or to inform paramedics what the search revealed. (*Id.* at 6.) Conceding that a *Terry* search may have been appropriate, Mr. Guy argues police performed far more than an acceptable pat-down under *Terry* when they "reached inside [his] clothing, rummaged around for contraband, and promptly stowed the bottles, labels unread, in an evidence collection bag."[6] (*Id.* at 7.) He argues police officers conducted the search solely to gather evidence (*id*. at 7-8) and points out that the community caretaking exception does not apply post *Caniglia*. (ECF No. 63 at 2-4, citing *Caniglia*, 151 S.Ct. at 1599.)

The Court disagrees with the inference Mr. Guy seeks to advance. Based on the totality of the circumstances, the Court finds the police officers reasonably searched Mr. Guy's person to effectively render medical aid. The Court finds persuasive that: (1) police officers responded to a

---

[6] Under *Terry v. Ohio*, 88 S.Ct. 1868, 1882 (1968), a protective frisk may be reasonable but "must be limited to that which is necessary for the discovery of weapons which might be used to harm the officer or others nearby."

5

911-call that a person was slumped in the hallway of an apartment building; (2) upon arrival, police officers observed Mr. Guy slumped in the hallway; (3) Mr. Guy was unresponsive to various attempts to rouse him; and (4) administering Narcan can save a person's life when overdosing on drugs. Mr. Guy argues that because Officer Wagaman did not personally administer Narcan to Mr. Guy, did not identify the pills obtained from Mr. Guy's pockets, and did not know what type of medical aid other officers or paramedics provided to Mr. Guy, police officers contrived a medical emergency to wrongly gather evidence through a warrantless search. (ECF No. 61 at 4-8.) But the record, including Mr. Guy's own Motion to Suppress, in which he admits the officers found him "overdosing and unconscious" and "facilitated the administration of medical services to reverse the overdose" (ECF No. 47 at 2), belies this argument. Officer Hrustanovic's report clearly states that Mr. Guy was unconscious, and that paramedics determined he was overdosing, administered Narcan, and transported him to the hospital. (ECF No. 62-1 at 1.) That Officer Wagaman did not personally render the medical aid is of no consequence. Under these circumstances, the Court finds the officers "faced an emergency that justified acting without a warrant" when they searched Mr. Guy to effectively render medical aid. *Missouri v. McNeely*, 133 S.Ct. 1552, 1559 (2013). The Court recommends Mr. Guy's Motion to Suppress be denied on these grounds.

Furthermore, even if the search were improper, suppression is not warranted because the pills are subject to the inevitable-discovery doctrine. *Nix v. Williams*, 467 U.S. 431, 444 (1984); *United States v. Durant*, 730 F.2d 1180, 1185 (8th Cir. 1984) (holding that the inevitable-discovery doctrine applies "when the evidence would have been inevitably discovered absent the illegal conduct"); *Hamilton v. Nix*, 809 F.2d 463, 465-66 (8th Cir. 1987) (en banc) (explaining that evidence is admissible under the inevitable-discovery doctrine if "it inevitably would have been

discovered by lawful means"). The record clearly shows that paramedics transported Mr. Guy to the hospital immediately following his encounter with the police officers. (ECF Nos. 59 at 17:1-2l; 62-1 at 1.) Hospital staff certainly would have found the pills on Mr. Guy's person, had police not already located them, and then turned them over to law enforcement. The inevitable discovery of this evidence thus presents an additional basis to deny Mr. Guy's Motion to Suppress.[7]

### RECOMMENDATION

Based on the foregoing, and on all of the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED THAT** Mr. Guy's Second Motion for Suppression of Evidence (ECF No. 47) be **DENIED**.

Dated: August 7, 2023              *s/ Dulce J. Foster*
                                   DULCE J. FOSTER
                                   United States Magistrate Judge

### NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. *See* Local Rule 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in Local Rule 72.2(c).

---

[7] Because the Court recommends Mr. Guy's Motion to Suppress be denied under both the medical aid exigency exception and the inevitable-discovery doctrine, it need not address the Government's additional argument related to the community caretaking exception.